FILED'11 MAY 19 15:18USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

BERT M. FERNANDEZ,                                    Civ. No. 10-3012-CL

                Plaintiff,                                    **ORDER**

      v.

UNITED STATES OF AMERICA and
DODENHOFF LOGGING CO.,

                Defendants.

_____

CLARKE, Magistrate Judge.

       This matter comes before the court on the United States' motion (#25) to dismiss for lack

of subject matter jurisdiction.  Upon consideration of the motion and the entire file, the motion to

dismiss is granted and this case is dismissed.

## BACKGROUND

       After exhausting his administrative remedies, 28 U.S.C. § 2675(a), plaintiff Bert M.

Fernandez ("Fernandez") filed this personal injury action on February 1, 2010, bringing claims

against the United States and Dodenhoff Logging Company ("Dodenhoff") under authority of the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, and 28 U.S.C. § 1346(b).

Dodenhoff was dismissed (#20) on October 18, 2010, by stipulation (#19) of plaintiff and

Dodenhoff. Fernandez seeks economic and non-economic damages for the alleged negligence of agents and employees of the United States Forest Service ("the Forest Service"), an agency of the United States Department of Agriculture ("USDA"), in failing to remove or causing a third party to remove a dangerous tree located in the Rogue River-Siskiyou National Forest ("the Forest") along State Highway 62, which fell on his work vehicle, causing him serious physical injury.

The United States' motion for summary judgment is jurisdictional, therefore the court need not examine the facts as they relate to the merits of Fernandez's claim. For the purpose of this motion, the relevant facts are as follows:

Pursuant to the Highway Safety Act of 1966, 23 U.S.C. § 401 *et seq.*, the United States Forest Service works in cooperation with the Federal Highway Administration to make travel on National Forest System roads as safe as practicable. Chapter 40 of the Forest Service handbook ("the FS Handbook") governs the Forest Service's highway safety program. (Decl. of Richard Toupin ("Toupin Decl."), Attach. A). Section 40.3 of the FS Handbook requires the Forest Service to manage hazards posed to road users "associated with roadside vegetation, including identification and mitigation of danger trees." (Id. at pp. 2). Section 40.5 of the FS handbook identifies "danger trees" as synonymous with "hazard trees," and defines these terms as "a standing tree that presents a hazard to people due to conditions such as, but not limited to, deterioration or physical damage to the root system, trunk, stem, or limbs and the direction or lean of the tree." (Id. at pp. 3-4). Section 41.6 of the FS Handbook provides that the maintenance of National Forest System roads includes the removal of "danger trees that threaten safe use of the transportation system." (Id. at pp. 5). Specific guidelines for the identification and correction of hazards associated with danger trees are set out in the FS Handbook at Section 41.7, subsection 2. (Id. at pp. 6-7). Section 40.4a of the FS Handbook provides that regional

foresters are responsible for providing regional guidance regarding identification and prioritization of danger trees, and for providing technical assistance to national forest staffs regarding danger tree evaluation. (Id. at pp. 3).

Pursuant to Section 40.4a of the FS Handbook, Region 6 of the Forest Service ("FS Region 6"), also known as the Pacific Northwest Region, has developed a regional manual ("Region 6 Manual") which addresses the identification and mitigation of danger trees in Chapter 30, Section 7733, "Safety Provisions on National Forest System Roads." (Toupin Decl., pp. 5, ¶ 16 & Attach. D). The Region 6 Manual provides, in relevant part: (1) trees may have a failure potential of low, likely, or imminent (§ 7733.05); (2) that danger trees along roads outside developed recreation sites will be assessed and classified using the Field Guide for Danger Tree Identification and Response developed by FS Region 6 in 2005 ("the 2005 Field Guide")[1] (§ 7733.31, subsection 2); (3) that the treatment of danger trees will be prioritized according to three variables: traffic volume, length of exposure, and tree failure potential (§7733.33); and (4) that high priority road segments are deemed time-critical and require prompt action, while medium to low priority roads are not considered time critical, however, due to changing tree failure potential, low to medium priority roads may become high priority and require prompt, time-critical action (§ 7733.34). The Region 6 Manual further provides that "[f]or roads on National Forest System lands managed by other jurisdictions (state, county, etc.)" the management of danger trees shall be addressed "in the easement language or in a Memorandum of Understanding (MOU)." (§ 7733.32, subsection 11).

---

[1] The 2005 Field Guide (Toupin Decl., Attach. B) was updated in 2008 ("the 2008 Field Guide"). (Toupin Decl., pp. 4-5, ¶ 15 & Attach. C). The Region 6 Manual provided by the United States has an effective date of June 8, 2007. Whether the Region 6 Manual has been updated to refer to the 2008 Field Guide is unknown and irrelevant to the outcome of this motion.

FS Region 6 and the Oregon Department of Transportation ("ODOT") executed a MOU in 2002 ("the MOU"). (Decl. of Iden Asato iso Def.'s Mot. To Dismiss ("Asato Decl."), Attach. A). The MOU defines danger trees as "trees and snags outside the clearing limits that have the potential for, or are of imminent danger, to highway traffic." (MOU § IX (5)). Danger tree removal is encompassed within the MOU's definition of "maintenance." (MOU § IX (1)). The MOU, as amended by letter opinion dated March 7, 2005, requires ODOT personnel to remove "imminent" danger trees" in an expedient manner by ODOT personnel, the Forest Service to "dispose of" jointly marked and selected "potential" danger trees "as promptly as possible" and the Forest Service and ODOT to cooperate in the removal of "potential" danger trees where the Forest Service cannot dispose of them through the timber sale process. (MOU § IX (5)(b) – (d)).

Pursuant to these procedures and 16 U.S.C. § 472a, FS Region 6 entered into a timber sale contract known as the 62 Pines Timber Sale Contract ("62 Pines contract") with Dodenhoff. (Asato Decl., pp. 3, ¶ 12). In the summer and fall of 2007, Forest Service employee Iden Asato ("Asato") marked several hundred trees the area covered by the 62 Pines contract as danger trees. (Id. at pp. 4, ¶ 13). The 62 Pines contract gave Dodenhoff the right to fell and remove these danger trees, but also provided that Dodenhoff could decline to do so based on the merchantability of the trees. (Id. at pp. 3-4, ¶ 12).

Asato looked at all the trees that he felt had the potential to reach Highway 62. (Decl. of Frederick H. Lundblade iso Pl.'s Obj. to Def.'s Mot to Dismiss ("Lundblade Decl."), Ex. B, Deposition of Iden Grant Asato ("Asato Dep."), pp. 23). Asato marked the tree at issue in this case ("the Tree") as a danger tree because it leaned towards Highway 62 and had a dead top, which caused him to believe that the Tree presented some risk of falling onto the highway. (Id. at pp. 28). Asato did not mark any of the trees covered by the 62 Pines contract as "imminent"

hazard trees. (Asato Decl. at pp. 4, ¶ 13). In his 36 years as a Forest Service employee, Asato only marked three trees as "imminent" hazard trees. (Id. at pp. 3, ¶ 9-10). Dodenhoff declined to cut and remove several of the identified hazard trees encompassed by the 62 Pines contract, including the Tree. (Id. at pp. 4, ¶ 14 & Att. B).

Fernandez began working part time as a highway maintenance employee for the Oregon Department of Transportation ("ODOT") in 1989, was hired full time in 1998, and continued to work there until his retirement in 2009. (Decl. Katherine Lorenz iso Def.'s Mot. to Dismiss ("Lorenz Decl."), Dckt. # 29, Att. A, Dep. of Bert Fernandez ("Fernandez Dep."), pp. 9-10, 13). In that capacity, Fernandez spent summers working on paving projects and winters plowing snow, removing hazardous trees, and generally maintaining roads, primarily in Jackson County. (Id. at pp. 9-10). Fernandez first became aware of the Tree in the fall of 2007. (Lundblade Decl., Ex. A, Fernandez Dep., pp. 48). Fernandez noticed that the Tree had been marked with blue paint, indicating that it was a hazard tree, yet had not been felled although Dodenhoff had logged the area around it pursuant to the 62 Pines contract. (Id.). Fernandez examined the Tree and noticed that it leaned slightly towards Highway 62. (Id. at pp. 50-51). The Tree was located at milepost 52.8 of Highway 62. (Id. at pp. 83).

On February 4, 2008, ODOT highway maintenance employees were working twelve-hour shifts instead of the regular 10-hour shifts due to severe weather. (Lorenz Decl., Att. B, Fernandez Dep., pp. 14). Fernandez was working the night shift, from 6 p.m. to 6 a.m. (Id. at pp. 14-15). At the end of his shift, Fernandez was driving back to the Prospect yard in a one-ton flatbed Ford truck, on the route he regularly used. (Id. at pp. 15, 21, 25). As Fernandez rounded the corner at milepost 52.8, the Tree fell on the cab of his truck, crushing it and causing him

serious injuries, including maceration of his scalp, a broken neck, a broken collar bone, and various cuts and bruises. (Lundblade Decl., Attach. A, Fernandez Dep., pp. 9).[2]

## LEGAL STANDARDS

The federal courts are courts of limited jurisdiction. *See, e.g.,* Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552, 125 S.Ct. 2611 (2005) (*citing* Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673 (1994)). Therefore, the presumption is against jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction." Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) (*quoting* Kokkonen, 511 U.S. at 377). "A Rule 12(b)(1) jurisdictional attack may be either facial or factual." Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (*citing* White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Three different standards apply in the evaluation of a Rule 12(b)(1) motion, depending upon how the motion is made and what it addresses.

First, in a facial attack, the factual allegations of the complaint are presumed to be true and conflicts in the pleadings are resolved in the plaintiff's favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (internal citations omitted); Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). The court need merely to look at the complaint to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. To survive

---

[2] For the purpose of this motion, the United States accepts plaintiff's account of the accident. However, a factual dispute exists as to whether the tree fell on plaintiff's truck, or whether the tree had already fallen and plaintiff struck the downed tree. (Mem. iso Def.'s Mot. to Dismiss, pp. 6-7, fn. 1).

such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction. Rio Props., Inc., 284 F.3d at 1019; *see also* Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999).

Second, in a factual attack challenge "[w]here the jurisdictional issue is separable from the merits of the case, judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elect. Corp., 594 F.2d 730, 733 (9th Cir. 1979). In this situation, the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and need not presume the truthfulness of the plaintiff's allegations. Id. (*quoting* Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977) 373 F.3d at 1039).

Third, in a factual attack where the relevant facts are dispositive of both the Rule 12(b)(1) motion and portions of the merits, the court applies the standard applicable to a summary judgment motion. Autery v. U.S., 424 F.3d 944, 956 (9th Cir. 2005) (internal citation omitted). That is, the motion to dismiss should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Trentacosta v. Frontier Pac. Aircraft Indust., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (*citing* Augustine v. U.S., 704 F.2d 1074, 1077 (9th Cir. 1983) (*citing* Thornhill Publ'g Co., 594 F.2d at 733-34)).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. *See* 28 U.S.C. § 1653. The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper, even if no request to amend the pleading was made, unless it is clear that the defective pleading cannot possibly be cured by the allegation of additional facts. Snell v. Cleveland, Inc., 316 F.3d 822, 828 n. 6 (9th Cir.2002) (*citing* Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir.2001)); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

## DISCUSSION

The United States, as a sovereign, may be sued only to the extent that it waives its

sovereign immunity from suit. <u>U.S. v. Mitchell</u>, 463 U.S. 206, 212, 103 S.Ct. 2961 (1983). The

FTCA waives sovereign immunity and holds the United States liable for certain torts "in the

same manner and to the same extent as private individuals in like circumstances," 28 U.S.C. §

2674, "in accordance with the law of the place where the act of omission occurred," 28 U.S.C. §

1346(b). However, the FTCA's broad waiver of sovereign immunity is qualified by 28 U.S.C. §

2680, which creates exceptions for certain categories of claims, "a statutory reservation of

sovereign immunity for a particular class of tort claims." <u>Gager v. U.S.</u>, 149 F.3d 918, 920 (9th

Cir. 1998). If one of the exceptions applies, the United States has not waived sovereign

immunity, and the court lacks subject matter jurisdiction to hear the case. <u>Cervantes v. U.S.</u>, 330

F.3d 1186, 1188 (9th Cir. 2003).

## I. THE DISCRETIONARY FUNCTION EXCEPTION

The FTCA immunizes instrumentalities of the federal government from tort liability

based on the performance of "a discretionary function or duty on the part of a federal agency or

an employee of the Government." 28 U.S.C. 2680(a). The discretionary function exception is

meant to avoid judicial second-guessing of governmental decisions. <u>U.S. v. S.A. Empresa de

Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 814, 104 S.Ct. 2755 (1984). Where

the exception applies, the court lacks subject matter jurisdiction. <u>Reed v. U.S. Dep't of Interior</u>,

231 F.3d 501, 504 (9th Cir. 2000). However, the exception is not "intended to create

inconsistent liabilities between private and government employees performing identical acts.

Thus, in cases where the government is alleged to have committed negligence in the performance

of a function such as that performed by a private citizen, rather than in the fulfillment of a broad

policy-making duty, the government is subject to suit." Marlys Bear Medicine v. U.S., 241 F.3d

1208, 1213 (9th Cir. 2001) (internal quotation marks and citation omitted).  The exception

applies "whether or not the discretion involved be abused."  28 U.S.C. 2860(a).  Accordingly, the

question of negligence is irrelevant to the applicability of the discretionary exception.

Kennewick Irrigation Dist. v. U.S., 880 F.2d 1018, 1029 (9th Cir. 1989).  The government bears

the burden of proving that the discretionary function exception applies.  Marlys Bear Medicine,

241 F.3d at 1213.

     A two-part test is used to evaluate whether the exception applies.  First, the court

determines whether the challenged conduct "involves an element of judgment or choice" for the

acting employee.  Berkovitz v. U.S., 486 U.S. 531, 536, 108 S.Ct. 1954 (1988).  Where a federal

statute, regulation, or policy specifically mandates that an employee follow a prescribed a course

of action, there can be no judgment or choice because "the employee has no rightful option but to

adhere to the directive." U.S. v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267 (1991); Miller v.

U.S., 163 F.3d 591, 593 (9th Cir. 1998).  Thus, where a regulation or policy mandates particular

conduct and the employee obeys the direction, the government will be protected because "the

action will be deemed in furtherance of the policies which led to the promulgation of the

regulation." Gaubert, 499 U.S. at 324.

     If the challenged conduct does involve judgment, then the exception applies if the

judgment is "based on considerations of public policy." Berkovitz, 486 U.S. at 536.  The acts of

a government agent are presumed to be grounded in policy when the agent exercises discretion

granted by "established governmental policy, as expressed or implied by statute, regulation, or

agency guidelines." Gaubert, 499 U.S. at 324; Miller, 163 F.3d at 593-94.  The court focuses on

"the nature of the actions taken and whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325.

## II. THE CHALLENGED CONDUCT

Fernandez seeks to hold the United States liable in tort for the injuries he suffered when the Tree fell on his truck on February 4, 2008. Fernandez argues that his injuries are the result of the negligence of the United States Forest Service in failing to remove the tree which fell on his truck ("the Tree") despite identifying it some six months earlier as a "danger tree" posing a risk of injury to travelers on Highway 62. Thus, the challenged conduct at issue is the Forest Service's failure to remove, or to cause a third party to remove, the Tree in compliance with Forest Service rules, regulations, or policies. It is undisputed that Fernandez's claim falls within the FTCA's waiver of sovereign immunity for torts based on negligence or "wrongful act[s]." 28 U.S.C. § 1346(b), *et seq.* The dispute in this case concerns whether the Forest Service's decision not to remove the Tree falls within the FTCA's discretionary function exception.

Fernandez argues that the Forest Service's action in failing to remove the Tree fails both prongs of the discretionary function exception test. First, Fernandez argues the discretionary function exception does not apply because the Forest Service regulations mandate that "danger trees" located on Forest Service be removed "as promptly as possible," therefore, the Forest Service did not have the discretion to delay the removal of the Tree once it had been identified as a danger tree. Second, Fernandez argues that, even if the Forest Service generally has discretion to make decisions regarding the removal of danger trees, its decision not to remove the Tree at issue here is not susceptible to policy analysis, therefore the discretionary function exception does not apply. The United States responds that the regulations governing the removal of danger trees on Forest Service land are inherently discretionary and therefore fall squarely under the

FTCA's discretionary function exception.  Furthermore, the Forest Service argues that the decision not to remove the Tree is readily susceptible to policy analysis and therefore is precisely the kind of action that is protected by the discretionary function exception.

### A. The Element of Discretion

Under the two-part Berkovitz/Gaubert test, the court must first determine whether the Forest Service's decision not to immediately remove the Tree after unsuccessfully attempting to dispose of it via timber sale was a matter of judgment or choice.  Because the Forest Service did not mandate specific timelines for the removal of "potential" danger trees, the court finds that the Forest Service's decision not to immediately remove the Tree after Dodenhoff declined to fell it was discretionary.

The parties appear to agree that Forest Service regulations prescribe the removal of danger trees, but disagree on whether the timeline for performing the removal is discretionary or mandatory.  Fernandez asserts that the removal of danger trees is governed by Section IX(5)(c) of the MOU, which he argues eliminates the exercise of discretion by mandating that danger trees be removed "as promptly as possible."  Fernandez points to no other statute, regulation or order as the basis for his challenge.  The United States responds that removal of the Tree at issue here was governed by MOU Section IX(5)(d), not Section IX(5)(c), because the Forest Service had attempted unsuccessfully to remove the tree via the timber sale process, therefore the "as promptly as possible" standard does not apply.  Moreover, the Forest Service argues that even if Section IX(5)(c) applies, the "as promptly as possible" standard is not sufficiently specific to constitute a mandate that the tree be removed immediately after the failed timber sale.

Neither Section IX(5)(c) or (d) imposes a mandatory duty upon the Forest Service to remove danger trees in a particular manner, using a particular method, or in a particular

timeframe, therefore, court need not decide which section applies to Fernandez's claim. MOU

Section IX(5), as modified,[3] provides:

> "(a) Imminent danger trees, those posing an immediate hazard, will be cleared from, or above, the roadway by ODOT maintenance personnel in an expedient manner.
>
> (b) Potential danger trees, those posing no immediate hazard, will be selected and marked jointly by ODOT and [Forest Service] personnel.
>
> (c) The [Forest Service] will dispose of such jointly designated potential danger trees as promptly as possible. ODOT will require posting warnings, flaggers and other safety measures deemed necessary to protect highway traffic during danger tree removal operations.
>
> (d) When [the Forest Service] cannot dispose of potential danger trees through its timber sale process, [the Forest Service] and ODOT will cooperate in removal of those trees."

(Asato Decl., Attach. A, pp. 6). Fernandez appears to concede that the Forest Service's

determination that the Tree was a "potential" danger tree involved the exercise of judgment and

is thus discretionary. However, he contends that, having determined that the Tree was a

"potential" danger tree, the Forest Service had no discretion to delay removal of the Tree because

MOU Section IX(5)(c) can only logically be read as a safety standard requiring immediate

action. This argument fails.

A safety standard operates to remove discretion under the first prong of the discretionary

function test only when such standard is "embodied in a specific and mandatory regulation or

statute which creates clear duties incumbent upon the governmental actors." Kennewick

Irrigation Dist., 880 F.2d at 1026. MOU Section IX(5)(c) does not "specifically prescribe[] a

course of action for an employee to follow" when deciding when to remove a danger tree.

Berkovitz, 486 U.S at 536. The question of what constitutes "as promptly as possible"

---

[3] The MOU, executed in 2002, is modified by the letter of clarification from Regional Forester Linda Goodman dated March 7, 2005. (Asato Decl., Attach. A, pp. 11).

necessarily involves a judgment call, as does the question of whether a tree is an "imminent" or "potential" danger tree. To argue, as Fernandez does, that the Forest Service violated its mandate to remove danger trees because it did not remove the Tree "as promptly as possible" simply begs the question.

Nor is there any other controlling statute, regulation or administrative policy mandating the method or manner in which the Forest Service conducts danger tree assessment and removal. While both national (FS Handbook § 40.3) and regional (Region 6 Manual § 7733.03) Forest Service policies provide that danger trees "must" or "will" be managed to ensure the safe passage by road users, (Toupin Decl., Attach. A, pp. 2; Attach. D, pp. 3), this general guideline is insufficient under Berkovitz to deprive the federal government of the protection of the discretionary function exception. Neither the FS Handbook nor the Region 6 Manual contains any provision mandating the immediate removal of "potential" danger trees. To the contrary, the FS Handbook provides that the removal of "potential danger trees," such as the Tree at issue here, "is not considered time-critical." (Toupin Decl., Attach. A, pp. 6). At most, the FS Handbook recommends in Chapter 40, § 41.7 (2)(d) that roads identified as having low and medium priority danger tree hazards be "monitored for increases in hazard due to ongoing tree deterioration," and requires that roads predicted to have future high priority tree hazards as the result of ongoing tree deterioration be assessed by a qualified individual to determine when the high priority hazards are likely to occur, and that mitigation of the hazards be mitigated by that date. (Id.). Similarly, Section 7733.34 of the Region 6 Manual provides that "[r]oads identified as medium to low priority are not considered time critical," but further provides that roads may move from medium to high priority and require prompt, "time-critical" action as the result of changing tree conditions. (Toupin Decl., Attach. D, pp. 13).

None of these "policies" imposes a general mandatory duty on the Forest Service to remove "potential" danger trees without delay or within any specific period of time. Although the Forest Service must remove danger trees, it has discretion to determine whether the tree is an "immediate" or "potential" danger tree and, having determined that a tree is a "potential" danger tree, has discretion to determine which removal method to use and when to remove the tree, provided that mitigation is accomplished by or before the date that the tree is likely to become a high priority hazard. Because the Forest Service's conduct involved the exercise of judgment or choice, the United States has satisfied the first prong of the discretionary function exception test.

## B. The Element of Policy Judgment

Having determined that the decision of danger tree removal is discretionary, the court must next consider whether the judgment of the Forest Service was "of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23. Because the Forest Service's decision not to immediately remove the Tree after Dodenhoff declined to fell it is consistent with its established policy for the treatment of "potential" danger tree, the court finds that the decision is susceptible to policy analysis.

The discretionary function exception applies only actions involving a decision susceptible to social, economic, or political policy analysis. O'Toole v. U.S., 295 F.3d 1029, 1033-34 (9th Cir. 2002). Where established governmental policy allows government agents to exercise discretion, the court starts with the presumption that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. Thus, the challenged decision "need not be actually grounded in policy considerations" to trigger the exception, so long as it is by its nature susceptible to policy analysis. Miller, 163 F.3d at 593.

Fernandez first argues that the Forest Service's decisions regarding the Tree after Dodenhoff declined to fell it are not susceptible to policy analysis because they were "merely operational or ministerial." The United States correctly argues that whether the discretionary function exception applies is not dependent on whether the relevant decision was made by an individual at the "operational" or the "planning" level. *See* Gaubert, 499 U.S. at 325-26. Thus, Fernandez's first argument lacks merit.

Next, Fernandez argues that the Forest Service's decisions regarding the Tree after Dodenhoff declined to fell it are not susceptible to policy analysis because the Forest Service has not provided any evidence that the decision to let this particular tree remain standing was the result of policy considerations. Although he does not phrase his argument as such, Fernandez's argument is essentially that the decision not to remove the Tree is an act of routine maintenance and therefore not susceptible to policy analysis. Danger tree removal is designated as "maintenance" activity by the MOU and the FS Handbook. (Asato Decl., Attach. A, pp. 5-6; Toupin Decl., Attach. A, pp. 5). The issue thus becomes whether danger tree removal is a matter of routine maintenance or required policy judgments.

In the Ninth Circuit, "matters of routine maintenance matters are not protected by the discretionary function exception because they generally do not involve policy-weighing decisions or actions." Terbush v. U.S., 516 F.3d 1125, 1133 (9th Cir. 2008) (*citing* Bolt v. U.S., 509 F.3d 1028, 1034 (9th Cir. 2007) (observing that snow removal in parking lot was a matter of routine maintenance involving "safety considerations under an established policy" and "not the kind of regulatory activity to which the Supreme Court envisioned the discretionary function exception applying") (internal citation omitted)); *see also* Whisnant v. U.S., 400 F.3d 1177, 1181 n. 1 (9th Cir. 2005) (clean up of toxic mold growth involved professional and scientific

judgment, not decision of social, economic, or political policy, thus government's failure to remove the mold was a matter of safety, not policy, and not protected under the discretionary function exception); Marlys Bear Medicine, 241 F.3d at 1215 (reservation of right to inspect logging operation to ensure safety measures were complied with was a policy choice, but failure to perform that inspection responsibility was not); Kennewick Irrigation Dist., 880 F.2d at 1027-28 (decision not to line an irrigation canal with concrete was policy choice, but failure to remove unsuitable materials during construction was not); ARA Leisure Servs. v. U.S., 831 F.2d 193, 195 (9th Cir. 1987) (designing road without guardrails was a choice grounded in policy considerations, but failure to maintain road in reasonably safe condition for the safety of the public tour buses encouraged to travel on it was not).

However, the Ninth Circuit has also recognized that the discretionary function exception may apply to the implementation of a government policy "where the implementation itself implicates policy concerns." Whisnant, 400 F.3d at 1182 n. 3. *See, e.g.*, Miller, 163 F.3d at 595-96 (firefighters balancing considerations of public and personal safety while battling forest fires); Alfrey v. U.S., 276 F.3d 557, 565 (9th Cir. 2002) (prison guards balancing prisoner and personal safety while searching prisoner cells in response to a reported threat); GATX/Airlog v. U.S., 286 F.3d 1168, 1175-77 (9th Cir. 2002) (Federal Aviation Administration's efforts to balance practical considerations such as staffing and funding against overseeing compliance with federal safety regulations).

Here, the Region 6 Manual requires that the Forest Service balance multiple competing factors when making decisions regarding the removal of danger trees, including concerns about the environment and wildlife, public access and safety, the likelihood of injury, resource allocation, and the availability and effectiveness of alternative treatments. (Toupin Decl., Ex. D,

pp. 5-9).  As described above, there is no controlling statute, regulation or administrative policy

mandating the method or manner in which the Forest Service conducts danger tree assessment

and removal.  Section 40.4a of the FS Handbook explicitly provides that the identification and

prioritization of danger trees is the responsibility of regional foresters, reflecting the reality that

different silvicultural techniques are required to appropriately manage the broad diversity of

topography and ecosystems encompassed by the National Forest System.  (Toupin Decl., Attach.

A, pp. 3).  Moreover, Section 7733.32 of the Region 6 Manual requires the Forest Service

conduct ongoing danger tree assessments at different rates frequency depending on site specific

situations, reflecting the reality that the constantly changing condition of the forest precludes

uniform silvicultural techniques even within forests in a particular region.  (Id.).  As discussed

above, the Forest Service conducts these assessments under broad discretionary directives which

not only do not impose mandatory timelines for the removal of danger trees, but provide that the

treatment of "potential" danger trees is not time-critical.

   Thus, unlike the cases in which the Ninth Circuit has found that the government was

bound by routine maintenance guidelines or regulations requiring specific safety measures, the

circumstances here demonstrate that the Forest Service exercised its discretion in determining

how to deal with the potential hazards presented by identified danger trees and in implementing

its decision for the treatment of these hazards, including its treatment of the Tree.  Because

established governmental policy allowed the Forest Service to exercise discretion in making

these decisions, its acts are presumptively grounded in policy.  Fernandez has offered no

evidence demonstrating to rebut this presumption.  The Forest Service's conduct is therefore

susceptible to policy analysis, thus the United States has satisfied the second prong of the

discretionary function exception test.

## **CONCLUSION**

For the reasons stated above, the United States has demonstrated that the discretionary

function exception to the Federal Tort Claims Act applies to the action challenged by Fernandez.

Because this court lacks subject matter jurisdiction, defendant's motion to dismiss (#25) is

GRANTED and this case is DISMISSED.


IT IS SO ORDERED.

DATED this _____ day May, 2011

_____
MARK D. CLARKE
United States Magistrate Judge